# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

LYNDA THOMAS,     ) No. 2:18-cv-13128-VAR-SDD
individually and on behalf of all others )
similarly situated,     )
      Plaintiff,  )
          )
  v.        )
          )
ACCENTURE, LLP, d/b/a SAGACIOUS )
CONSULTANTS, LLC, and DB  )
HEALTHCARE, INC.,    )
          )
      Defendants. )
_____)

## PLAINTIFF'S MOTION AND MEMORANDUM OF LAW
## IN SUPPORT OF UNOPPOSED MOTION FOR
## <u>APPROVAL OF THE SETTLEMENT AGREEMENT</u>

# **TABLE OF CONTENTS**

I.     INTRODUCTION.................................................................................1

II.    THE TERMS OF THE SETTLEMENT AGREEMENT ...........................4

   A.  The FLSA Collective Members ................................................4

   B.  Notice of the Settlement to FLSA Collective Members ............................5

   C.  Calculation and Distribution of the Gross Settlement Amount..................6

   D.  Release of Claims ....................................................................9

   E.  Attorneys' Fees and Costs ......................................................9

III.   ARGUMENT ......................................................................10

   A.  Standard for Settlement Approval Under the FLSA ................................10

   B.  The *Wolinsky* Factors Support Approval of the Settlement .....................12

       1.   The Settlement Agreement Represents a Reasonable Compromise of Disputed Issues....................................................................12

       2.   The Monetary Terms and the Release Contained in the Settlement Agreement are Fair in Light of the Potential Recovery in the Case...13

       3.   Avoiding Anticipated Burdens in Establishing the Respective Claims and Defenses and the Seriousness of the Litigation Risks Faced by the Parties .................................................................16

       4.   Arm's-Length Bargaining Between Experienced Counsel and the Possibility of Fraud or Collusion ..................................................17

   C.  The Proposed Service Award to the Named Plaintiff is Fair and Reasonable ...................................................................17

   D.  Certification of the FLSA Collective Pursuant to 29 U.S.C. § 216(b) is Appropriate .................................................................19

   E.  The Attorneys' Fees and Costs Provisions of the Settlement Agreement Fairly Compensate Plaintiff's Counsel for the Time and Expense in Litigating This Matter and Should be Approved...................................20

       1.   The Attorneys' Fees Requested Should be Approved .....................20

       2.   Plaintiff's Counsel's Costs Should be Approved ............................24

IV.   CONCLUSION.......................................................................25

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Belmont v. Homes of Opportunity, Inc.*,
   No. CV 18-10854, 2018 WL 6571145 (E.D. Mich. Dec. 13, 2018) .................20

*Briggs v. PNC Fin. Servs. Group, Inc.,*
   No. 15–cv–10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) .....................12

*Brooklyn Sav. Bank v. O'Neil*,
   324 U.S. 697 (1945).......................................................................................10

*Brown v. AK Lawncare, Inc.*,
   No. 14-14158, 2017 WL 1950988 (E.D. Mich. May 11, 2017)........................11

*Cheeks v. Freeport Pancake H., Inc.*,
   796 F.3d 199 (2d Cir. 2015) ..........................................................................10

*Cisek v. Nat'l Surface Cleaning, Inc.*,
   954 F. Supp. 110 (S.D.N.Y. 1997)..................................................................20

*Cooper v. Winking Lizard, Inc.*,
   1:16-cv-1513, 2017 WL 4465759 (N.D. Ohio Oct. 4, 2017)............................14

*Frank v. Eastman Kodak Co.*,
   228 F.R.D 174 (W.D.N.Y. 2005) ............................................................ 13, 19

*Hadix v. Johnson*,
   322 F.3d 885 (6th Cir. 2003) ........................................................................18

*Henry v. Little Mint, Inc.*,
   No. 12-cv-3966, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) .......................21

*In re Austrian & German Bank*,
   80 F. Supp. 2d ...............................................................................................13

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003)........................................................... 12, 24

*In re CMS Energy ERISA Litig.*,
   No. 02-72834, 2006 WL 2109499 (E.D. Mich. June 27, 2006)........................18

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005) ........................................................................22

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ...........................................................................22

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ..................................................................23

*Johnson v. Brennan*,
   No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ....................22

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*,
   No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ......................12

*Liberte Capital Group v. Capwill*,
   No. 5:99-cv-818, 2007 WL 2492461 (N.D. Ohio Aug. 29, 2007) ....................17

*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp. 2d 766 (N.D. Ohio 2010) ...........................................................17

*Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor*,
   679 F.2d 1350 (11th Cir. 1982) ......................................................................11

*Monroe v. FTS USA, LLC*,
   860 F.3d 389 (6th Cir. 2017) ..........................................................................19

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ...........................................................................13

*Osman v. Grube, Inc.*,
   No. 3:16-CV-00802-JJH, 2018 WL 2095172 (N.D. Ohio May 4, 2018) ..... 12, 21

*Rankin v. Rots*, 02-CV-71045,
   2006 WL 1876538 (E.D. Mich. June 27, 2006) ...............................................14

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
   No. 10-cv-14360, 2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) ...................18

*Snook v. Valley OB-Gyn Clinic, P.C.*,
   No. 14-cv-12302, 2015 WL 144400 (E.D. Mich. Jan. 12, 2015) ......................11

*Swigart v. Fifth Third Bank*, 1:11-CV-88,
  2014 WL 3447947 (S.D. Ohio July 11, 2014) ................................................. 18

*Vaszlavik v. Storage Tech. Corp.*,
  No. 95-V-2525, 2000 WL 1268824 (D. Colo. March 9, 2000) ......................... 21

*Vela v. City of Houston*,
  276 F.3d 659 (5th Cir. 2001) ........................................................................... 21

*Wade v. Werner Trucking Co.*, 2:10-CV-270,
  2014 WL 2535226 (S.D. Ohio June 5, 2014) ................................................... 24

*Williams v. Alimar Sec., Inc.*,
  CV 13-12732, 2017 WL 427727 (E.D. Mich. Feb. 1, 2017) ............................. 12

*Williams v. Aramark Sports, LLC*,
  No. 10-cv-1044, 2011 WL 4018205 (E.D. Pa. Sept. 9, 2011) .......................... 21

*Williams v. K&K Assisted Living LLC*,
  No. 15-cv-11565, 2016 WL 319596 (E.D. Mich. Jan. 27, 2016) ...................... 11

*Wolinsky v. Scholastic Inc.*,
  900 F. Supp. 2d 332 (S.D.N.Y. 2012) ....................................................... 11, 20

*Woods v. N.Y. Life Ins. Co.*,
  686 F.2d 578 (7th Cir. 1982) ........................................................................... 12

## Statutes

Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FSA") ...................... *passim*

## I.     INTRODUCTION

This wage and hour lawsuit brought against Defendants Accenture, LLP ("Accenture") d/b/a Sagacious Consultants, LLC ("Sagacious") and DB Healthcare, Inc. ("DB Healthcare") (collectively, "Defendants") has been settled subject to this Court's approval, and Plaintiff Lynda Thomas ("Plaintiff") respectfully submits this memorandum of law in support of Plaintiff's Unopposed Motion for Approval of the Settlement Agreement. As discussed herein, the proposed settlement is fair and reasonable and warrants this Court's approval.

Plaintiff worked for Defendants as a Consultant, providing support and training to Defendants' clients in connection with the implementation of new electronic recordkeeping systems. Plaintiff routinely worked 12-hour days, six or seven days a week, while working on projects for Defendants, however, Plaintiff did not receive time-and-a-half for hours worked in excess of 40 a week. On October 5, 2018, Plaintiff filed a Collective Action Complaint in this Court alleging that Defendants violated the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") by failing to pay Plaintiff and other individuals who worked as Consultants providing training and support to Defendants' clients in connection with the implementation of new electronic recordkeeping systems overtime for all hours worked in excess of 40 a week. (ECF No. 1.)

In November 2018, the Parties agreed to participate in a private mediation

1

process. The parties filed an ADR stipulation with the Court, which the Court approved on November 29, 2018, and filed an updated stipulation, which the Court approved on January 22, 2019. (ECF Nos. 19, 23.) Prior to the mediation, the Parties engaged in informal discovery, prepared detailed mediation statements, and prepared their respective damages analyses. After considerable negotiations, including a full-day, in-person mediation session with experienced mediator Honorable Wayne Andersen (Ret.), in Chicago, Illinois, on March 14, 2019, and after further negotiations thereafter, the Parties reached a proposed collective settlement of this matter. The terms of the Parties' settlement are set forth in a Settlement Agreement (the "Agreement") (attached hereto as Exhibit 1); *see also* Declaration of Sarah R. Schalman-Bergen ("Schalman-Bergen Decl.") ¶¶ 18-24 (attached hereto as Exhibit 2). Copies of the proposed Notice and Claim Form are attached as Exhibits A and B to the Settlement Agreement.

The Settlement includes a gross cash payment of Four Hundred Fifteen Thousand Dollars and Zero Cents ($415,000.00) (the "Gross Settlement Amount"). Agreement ¶ 10(k). Under the terms of the proposed Settlement, FLSA Collective Members (defined below) will receive Notice of the Settlement, and FLSA Collective Members who are not already a Plaintiff or Opt-In Plaintiff will have sixty (60) days to return their Claim Forms in order to take part in the settlement. *Id.* ¶¶ 10(d), (n), (o); 13(d)-(e). Within thirty (30) days after the Claim Deadline, or as soon

as reasonably practicable, Eligible Collective Members will receive a Settlement Award check. *Id.* ¶ 20. Importantly, only the Plaintiff, Opt-In Plaintiffs, and individuals who submit Claim Forms ("Eligible Collective Members") will be part of the settlement and release their claims against Defendants. *Id.* ¶ 11.

Eligible Collective Members who submit a Claim Form will release all federal, state, and local wage and hour claims against Defendants that accrued during the Eligible Collective Member's work on Go Live Projects for Sagacious and/or Accenture at any time between three years prior to the date the Opt-In Plaintiff filed a consent form on the docket or November 21, 2015, whichever is earlier, through March 14, 2019, including claims for unpaid wages, overtime, liquidated damages, penalties, attorneys' fees, interest, and claims derived from the alleged failure to pay overtime wages during that time period. Agreement ¶ 10(t). The portion of the Net Settlement Amount not claimed by FLSA Collective Members shall be returned by the Settlement Administrator to Defendants in recognition that Defendants only receive a release when FLSA Collective Members submit a Claim Form. *Id.* ¶ 21.

The Settlement Agreement provides an excellent settlement for FLSA Collective Members with respect to their claims for unpaid wages and overtime arising from Defendants' alleged improper wage and hour practices at issue given the possibility that the litigation, if not settled now, would result in no recovery for FLSA Collective Members or a recovery that was much less favorable. The Gross

3

Settlement Amount represents approximately *125%* of the FLSA Collective Members' single damages in this case. *See* Schalman-Bergen Decl. ¶ 20.

Accordingly, Plaintiff respectfully requests that the Court issue an Order: (1) certifying the FLSA Collective for settlement purposes only; (2) approving attorneys' fees in the amount of one-third of the Gross Settlement Amount (*i.e.*, $138,333.33) and costs and expenses up to $13,000.00; (3) approving the proposed Notice and Claim Form and authorizing distribution of the Notice and Claim Form to the FLSA Collective; (4) approving the use of Angeion Group, LLC as the Settlement Administrator; and (5) granting approval of the Settlement Agreement and dismissing the action with prejudice pursuant to the terms of the Settlement Agreement.

## II.   THE TERMS OF THE SETTLEMENT AGREEMENT

### A.   The FLSA Collective Members

The Settlement Agreement provides that the FLSA Collective Members include Plaintiff, Opt-In Plaintiffs, and all individuals who worked for any of the Defendants during the Relevant Time Period (*i.e.*, for Opt-In Plaintiffs: three years prior to the date the Opt-In Plaintiff filed a consent form on the docket through March 14, 2019; or for individuals who have not yet opted in, November 21, 2015 through March 14, 2019), providing support and training to Sagacious and/or Accenture's clients in connection with the implementation of new electronic

recordkeeping systems ("Go Live Projects") and who, while performing such work, did not receive overtime compensation for hours worked in excess of forty in a workweek. The Parties agree that there are 257 members of the FLSA Collective, and Plaintiff has relied on this data, which was produced by Defendants during the mediation process, in agreeing to the Settlement. Agreement ¶ 10(j).

While Defendants assert that if this case were to be litigated, collective action treatment under the FLSA would be inappropriate, Defendants agree that, for settlement purposes only, the collective action may be certified pursuant to the FLSA. Each FLSA Collective Member will be fully advised of this collective action settlement with the Notice of Settlement that is attached to the Agreement as Exhibit A. With the exception of Plaintiff and Opt-In Plaintiffs, only FLSA Collective Members who submit a Claim Form will release their wage and hour claims as part of this settlement, and the rights of those who do not submit a Claim Form will not be affected by the Settlement. Agreement ¶ 11; Schalman-Bergen Decl. ¶ 24.

### B.     Notice of the Settlement to FLSA Collective Members

The Agreement provides what Plaintiff believes is the fairest and most practicable procedure for notifying FLSA Collective Members of the terms of the Settlement and their respective rights and obligations: U.S. First Class Mail and email. Under the terms of the Agreement, within thirty (30) days after the Effective Date (*i.e.*, the first business day after the date that the Court enters the Approval

Order), Defendants shall provide to the Settlement Administrator in electronic form, the names and most current addresses, telephone numbers, email addresses, social security numbers, Overtime Weeks, and the total number of overtime hours worked in the Overtime Weeks, for each FLSA Collective Member (the "Collective List"), to the extent and as maintained in its electronic human resources or payroll systems. Agreement ¶ 13(a).

Within fifteen (15) days after receiving the Collective List, the Settlement Administrator shall mail and email an agreed-upon and Court-approved Notice, and, to current FLSA Collective Members who are not Named Plaintiffs or Opt-In Plaintiffs, a Claim Form, along with a self-addressed postage pre-paid envelope ("Notice Package"). Agreement ¶¶ 13(b)-(e). The emailed version of the Notice and Claim Form will include a link for FLSA Collective Members to fill out and return their form using an electronic signature service. *Id.* ¶ 13(d). FLSA Collective Members will have sixty (60) days to return their Claim Forms. Agreement ¶ 10(c). Fifteen (15) days before the sixty (60) day notice period is set to expire, the Settlement Administrator will send reminder emails and/or make phone calls to FLSA Collective Members who have not yet returned a Claim Form. *Id.* ¶ 13(d).

### C.   Calculation and Distribution of the Gross Settlement Amount

The total amount paid by Defendants as part of the Settlement (the "Gross Settlement Amount") is $415,000.00. Agreement ¶ 10(k). Pursuant to the Settlement

Agreement, thirty (30) business days after the Effective Date, Defendant shall deposit the Gross Settlement Amount with the Settlement Administrator. *Id.* ¶ 15.

The Gross Settlement Amount includes amounts to cover: (1) a service award to Plaintiff Lynda Thomas in the amount of $10,000.00 for her efforts in bringing and prosecuting this matter; (2) the payment of attorneys' fees in the amount of one-third (1/3) of the Gross Settlement Amount (*i.e.*, $138,333.33), as well as costs and expenses not to exceed $13,000.00, which will compensate Plaintiff's Counsel for all work performed in the litigation to date plus all work remaining to be performed, including, but not limited to, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Action; and (3) Settlement Administration costs not to exceed $30,000.00. Agreement ¶ 10(m).

After subtracting these amounts from the Gross Settlement Amount, the balance of the funds ("Net Settlement Amount") shall be used as a basis for calculating settlement awards for each FLSA Collective Member. Each FLSA Collective Member's share shall be calculated as follows:

> (1) For each overtime hour worked during an Overtime Week during the Relevant Time Period, each FLSA Collective Member shall receive one (1) settlement share.

> (2) The total number of settlement shares for all FLSA Collective Members will be added together. Thereafter, the Net Settlement Amount will be divided by the resulting sum of the total number settlement shares to reach a per share dollar figure. That figure

> will then be multiplied by each FLSA Collective Member's
> number of settlement shares to determine each FLSA Collective
> Member's Settlement Award. The sum of all FLSA Collective
> Members' settlements awards shall not exceed the Net
> Settlement Award.

Agreement ¶ 13(b). Eligible Collective Members will receive a settlement award from the Net Settlement Fund based on the formula set out above. *Id*. Settlement award determinations and inclusion in the FLSA Settlement Collective are based on Defendants' personnel and payroll records. *Id*. ¶ 13(a).

Settlement Awards to Eligible Collective Members for Overtime Weeks when the Eligible Collective Member was classified by either Defendant as an independent contractor shall be reported on an IRS Form 1099 and shall not be subject to FICA and FUTA withholding taxes by that Defendant. Settlement Awards to Eligible Collective Members for Overtime Weeks when the Eligible Collective Member was classified by either Defendant as a W-2 employee shall be reported on a Form W-2 and shall be subject to applicable federal, state, and local taxes and withholdings by that Defendant. Each Defendant shall pay the employers' side of taxes, separate from the Gross Settlement Amount, for those Overtime Weeks where the Eligible Class Member was classified by the Defendant as an employee. *Id*. ¶ 19. Settlement Award checks will be negotiable for one-hundred eighty (180) days from the date they are issued. Any proceeds from checks that are uncashed at the end of the 180-day period will be returned to Defendants on a *pro rata* basis as FLSA Collective Members who

do not participate in the Settlement by submitting a Claim Form shall release no claims against Defendants. *Id.* ¶ 21.

### D.    Release of Claims

In exchange for the Settlement benefits, Eligible Collective Members release all federal, state, and local wage and hour claims against Defendants that accrued during the Eligible Collective Member's work on Go Live Projects for Sagacious and/or Accenture at any time between three years prior to the date the Opt-In Plaintiff filed a consent form on the docket or November 21, 2015 whichever is earlier, through March 14, 2019, including claims for unpaid wages, overtime, liquidated damages, penalties, attorneys' fees, interest, and claims derived from the alleged failure to pay overtime wages during that time period. Agreement ¶ 10(t). The release covers Defendants and their respective current and former subsidiaries, affiliates, divisions and joint ventures and all of their shareholders, officers, directors, employees, agents, owners, members, managers, executors, consultants, administrators, general partners, limited partners, predecessors, successors, transferees, assigns, registered representatives, attorneys and any other persons acting on their behalf and each of them and the predecessors and successors, assigns, and legal representatives of all such entities and individuals. Agreement ¶ 10(t).

### E.    Attorneys' Fees and Costs

Pursuant to the Settlement Agreement, Plaintiff's Counsel will receive one-

third (1/3) of the Gross Settlement Amount, or $138,333.33, in attorneys' fees, plus their actual expenses, not to exceed $13,000.00, which will compensate Plaintiff's Counsel for all work performed in this lawsuit and costs and expenses incurred, as well as all of the work remaining to be performed, including, but not limited to securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the lawsuit. Agreement ¶ 10(m).

## III.    ARGUMENT

### A.    Standard for Settlement Approval Under the FLSA

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be . . . ." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The two limited circumstances in which FLSA claims may be compromised are (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c) or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Cheeks v. Freeport Pancake H., Inc.*, 796 F.3d 199, 206

(2d Cir. 2015); *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982).

"In reviewing a settlement of an FLSA private claim, a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Brown v. AK Lawncare, Inc.*, No. 14-14158, 2017 WL 1950988, at *2 (E.D. Mich. May 11, 2017) (citing *Williams v. K&K Assisted Living LLC*, No. 15-cv-11565, 2016 WL 319596, at *1 (E.D. Mich. Jan. 27, 2016)) (internal quotation marks and citations omitted). In determining whether a proposed settlement is fair and reasonable, the court considers several factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; (5) and the possibility of fraud or collusion.

*Id.* (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)) (internal quotation marks and citations omitted). "A district court may choose to consider only factors that are relevant to the settlement at hand." *Id.* (citing *Snook v. Valley OB-Gyn Clinic, P.C.*, No. 14-cv-12302, 2015 WL 144400, at *1 (E.D. Mich. Jan. 12, 2015)).

Finally, a one-step approval process is appropriate in FLSA settlements. *See Osman v. Grube, Inc.*, No. 3:16-CV-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (citing *Briggs v. PNC Fin. Servs. Group, Inc.,* No. 15–cv–10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) (citing *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) ("A one–step settlement approval process is appropriate[ ] in FLSA settlements.")) "Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions." *Id.* (citing *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579–80 (7th Cir. 1982)).

## B. The *Wolinsky* Factors Support Approval of the Settlement

### 1. The Settlement Agreement Represents a Reasonable Compromise of Disputed Issues

The Settlement Agreement reflects a reasonable compromise of disputed issues related to the merits as well as collective treatment of Plaintiff's claims. As one court noted in considering a proposed FLSA settlement, "both parties face risks if the Court determines the appropriate calculation of overtime pay." *Williams v. Alimar Sec., Inc.*, CV 13-12732, 2017 WL 427727, at *3 (E.D. Mich. Feb. 1, 2017). In this case, as in many collective actions, "[t]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003).

12

In this case, while Plaintiff contends that she and the FLSA Collective Members were non-exempt employees of Defendants and were denied overtime compensation in violation of the FLSA, Defendants argue that they properly classified its consultants as independent contractors and/or exempt employees. Schalman-Bergen Decl. ¶ 14. After evaluating the evidence in this case, the Parties agree that significant factual questions remain with respect to liability and damages under Plaintiff's theory. *Id*. Defendants also maintain that collective action treatment of Plaintiff's claims is not appropriate. *Id*. Thus, the outcome of a motion for conditional certification filed by Plaintiff is far from certain. *Id*.

> ## 2. The Monetary Terms and the Release Contained in the Settlement Agreement are Fair in Light of the Potential Recovery in the Case

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id*. (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The instant Settlement represents a reasonable compromise since, "given the factual and legal complexity of the case, there is no guarantee

Plaintiffs would have prevailed. In contrast, the Settlement Agreement assures that Plaintiffs will receive compensation for the alleged violations at issue." *Cooper v. Winking Lizard, Inc.*, 1:16-cv-1513, 2017 WL 4465759, at *3 (N.D. Ohio Oct. 4, 2017).

Plaintiff's Counsel calculate that the potential unliquidated unpaid wage damages of the 257 FLSA Collective Members are approximately $333,021.91. Schalman-Bergen Decl. ¶ 17. Plaintiff contends that this number reflects Plaintiff's detailed, week-by-week calculations of the possible overtime damages for each of the FLSA Collective Members were they eventually successful at trial. *Id*. Thus, the $415,000.00 settlement requires Defendants to pay approximately 125% of the total unliquidated damages that the FLSA Collective Members could have recovered if they continued to pursue this action and had been successful at trial. *Id*. ¶ 20. The recovery to Plaintiff and FLSA Collective Members is, therefore, a fair and reasonable resolution of the dispute and should be approved. *See, e.g.*, *Rankin v. Rots*, 02-CV-71045, 2006 WL 1876538, at *4 (E.D. Mich. June 27, 2006) (finding settlement amount representing 18-46 percent of each plaintiff's total claimed damages reasonable as it was conceivable that plaintiffs could recover less at trial).

The settlement value reflects (1) the fact that Defendants would have vigorously contested the merits of Plaintiff's FLSA claims, including collective action certification; and (2) that Defendants contend that the shorter two-year statute

of limitations under the FLSA would have been appropriate, which would severely limit Plaintiff's and FLSA Collective Members' possible recovery. *See* Schalman-Bergen Decl. ¶¶ 12-15; *see also* 29 U.S.C. § 255(a). Were she successful at trial, Plaintiff would have sought liquidated damages in an amount equal to the back pay award, and Defendants would have argued that they acted in good faith and that liquidated damages were not appropriate. *See* Schalman-Bergen Decl. ¶ 15; *see also* 29 U.S.C. § 216 (permitting liquidated damages); 29 U.S.C. § 260 (providing the employer with a safe harbor to avoid liquidated damages where actions were undertaken "in good faith").

Given the abundance of disputed issues, a settlement that requires Defendants to pay more than the full amount of unliquidated FLSA damages during a three-year statutory period is a fair and reasonable compromise of the FLSA Collective Members' claims. Schalman-Bergen Decl. ¶¶ 11; 12-15. Most importantly, the FLSA Collective Members who do not submit Claim Forms will not waive their wage and hour claims against Defendants. Agreement ¶ 11; Schalman-Bergen Decl. ¶¶ 22-24.

The formula to determine each FLSA Collective Member's settlement payment is also fair and reasonable. Plaintiff proposes to allocate the settlement funds pursuant to a formula whereby, after a deduction of the approved attorneys' fees, litigation costs, administration fees, and the service payment, the remaining

settlement funds will be allocated among Eligible Collective Members based on the number of overtime hours that they worked for Defendants during the Relevant Time Period as a fraction of the overtime hours worked by all FLSA Collective Members. *Id.* ¶¶ 19-20. Thus, those individuals who worked more hours for Defendants will receive more under the Settlement Agreement. *Id.*

The scope of the release in the Settlement Agreement is also fair and reasonable. FLSA Collective Members will release only the wage claims that they may have against Defendants and accompanying claims for attorneys' fees and costs. Schalman-Bergen Decl. ¶ 21; Agreement ¶ 10(s). Further, there is no release of prospective rights or non-wage claims. FLSA Collective Members who do not submit a Claim Form for this settlement will not release any claims that they may have against Defendants. *Id.*

### 3. Avoiding Anticipated Burdens in Establishing the Respective Claims and Defenses and the Seriousness of the Litigation Risks Faced by the Parties

Plaintiff believes that the Settlement is an excellent result for the FLSA Collective. Defendants were prepared to vigorously defend this action by asserting a number of defenses to liability and disputing that the claims presented were appropriate for FLSA collective action treatment. The proposed settlement provides relief to Plaintiff and the FLSA Collective Members that takes into account Defendants' defenses and provides compensation to Collective Members without

years of delay incumbent in continued litigation.

### 4. Arm's-Length Bargaining Between Experienced Counsel and the Possibility of Fraud or Collusion

The Settlement is the result of contested litigation, factual discovery, and arm's-length negotiations. Schalman-Bergen Decl. ¶¶ 10, 14-15. It was reached only after the Parties exchanged substantial settlement-related discovery and conducted a full-day, in-person mediation session in Chicago, Illinois, followed by additional negotiations. *Id*. ¶¶ 9-10. As described above, Plaintiff's Counsel extensively investigated the applicable law and applied it to the relevant facts, taking into account the potential defenses. *Id*. ¶¶ 12-15.

### C. The Proposed Service Award to the Named Plaintiff is Fair and Reasonable

The settlement also provides for a service payment of $10,000.00 to Named Plaintiff Thomas, which is fair and reasonable. Courts in this Circuit recognize that "class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010). Thus, "[n]umerous courts have authorized incentive awards" as a way to reward "class representatives for their often extensive involvement with a lawsuit." *Liberte Capital Group v. Capwill*, No. 5:99-cv-818, 2007 WL 2492461, *1–2 (N.D.

Ohio Aug. 29, 2007). In sum, "incentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson,* 322 F.3d 885, 897 (6th Cir. 2003).

Plaintiff brought this action on behalf of other consultants who worked for Defendants. She provided her pay records and contracts and helped Plaintiff's Counsel develop their theories of liability and damages models. Schalman-Bergen Decl. ¶ 26. Plaintiff provided significant assistance to Plaintiff's Counsel as they drafted the Complaint, reviewed Defendants' data and document production, and prepared for mediation, and the modest incentive award of $10,000.00 fairly recognizes the services that she has performed in advancing the FLSA Collective Members' interests and the time that she dedicated to the lawsuit. *Id.* ¶ 26. This amount is consistent with service awards that have been approved in similar cases.[1] Courts have routinely recognized the importance of such awards in wage cases of this nature, where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of

---

[1] *See, e.g., Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, No. 10-cv-14360, 2015 WL 1498888, at *18 (E.D. Mich. Mar. 31, 2015) ("Courts have approved incentive awards of up to $15,000 for individual plaintiff class representatives for providing information to class counsel, receiving and approving pleadings, assisting in discovery and participating in settlement discussions.") (citing *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006)); *Swigart v. Fifth Third Bank*, 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (approving incentive award of $10,000 to each named representative).

the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005). The Service Award requested here should be approved.

### D. Certification of the FLSA Collective Pursuant to 29 U.S.C. § 216(b) is Appropriate

The FLSA allows workers to bring an action either on an individual basis or on a collective basis for himself or herself "and other employees similarly situated." 29 U.S.C. § 216(b). The Sixth Circuit has held that there are "three nonexhaustive factors that [are] relevant to the FLSA's similarly situated analysis: (1) the 'factual and employment settings of the individual[ ] plaintiffs'; (2) 'the different defenses to which the plaintiffs may be subject on an individual basis'; and (3) 'the degree of fairness and procedural impact of certifying the action as a collective action.'" *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017), *cert. denied,* 138 S. Ct. 980, 200 L. Ed. 2d 248 (2018)

Plaintiff and the FLSA Collective Members in this case are similarly situated, as they had substantially similar job requirements and were subject to a common practice, policy or plan whereby they were all required to perform work without overtime compensation. Plaintiff and FLSA Collective Members performed the same tasks, which generally consisted of providing support and training to healthcare staff in connection with the implementation of a new electronic recordkeeping system. They worked similar schedules and were subject to the same compensation

policies and practices—they were paid a set hourly rate, and were not paid time-and-a-half for hours worked in excess of forty a week. In sum, Plaintiff has demonstrated the existence of a collective of similarly situated employees, such that collective certification is appropriate. Schalman-Bergen Decl. ¶ 14.

### E. The Attorneys' Fees and Costs Provisions of the Settlement Agreement Fairly Compensate Plaintiff's Counsel for the Time and Expense in Litigating This Matter and Should be Approved

#### 1. The Attorneys' Fees Requested Should be Approved

The FLSA allows for a Plaintiff to recover his/her attorneys' fees and expenses under the statute's fee-shifting provisions. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to Plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). "Where the settlement agreement includes the payment of attorney's fees, the court must assess the reasonableness of that amount." *Belmont v. Homes of Opportunity, Inc.*, No. CV 18-10854, 2018 WL 6571145, at *1 (E.D. Mich. Dec. 13, 2018) (citing *Wolinsky*, 900 F. Supp. 2d at 336). "[T]he Court must carefully scrutinize the settlement and the circumstances in which it was reached, if only to ensure that 'the interest of Plaintiff's counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients.'" *Id.* (quoting *Cisek v. Nat'l Surface Cleaning, Inc.*, 954 F. Supp. 110, 110-11 (S.D.N.Y. 1997)).

Here, the Settlement Agreement provides for the payment of Plaintiff's attorneys' fees in the amount of one-third (1/3) of the $415,000.00 settlement fund (*i.e.*, $138,333.33). Courts in the Sixth Circuit and from around the country have awarded similar percentage fees in other class and collective action cases. *See e.g.*, *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) (approving the plaintiffs' request for one-third of the common settlement fund).[2] Fees within this range are "presumptively reasonable." *Vaszlavik v. Storage Tech. Corp.*, No. 95-V-2525, 2000 WL 1268824, at *4 (D. Colo. March 9, 2000).

In litigating this case, Plaintiff's Counsel have collectively spent approximately 299.3 hours advocating on behalf of Plaintiff and the FLSA Collective. Schalman-Bergen Decl. ¶ 36; Declaration of Harold Lichten ("Lichten Decl.") ¶ 9 (attached hereto as Exhibit 3); Declaration of David Blanchard ("Blanchard Decl.") ¶¶ 14-16 (attached hereto as Exhibit 4). These hours result in a

---

[2] *See also Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (noting fee awards generally ranging from 35% to 40% are common in cases taken on a contingent fee basis); *Dunkel v. Warrior Energy Servs., Inc.*, No. 2:13-cv-695-MRH (W.D. Pa. Apr. 15, 2016) (Hornak, J.) (approving fee award of 33.33% of the total settlement amount to Class Counsel in wage and hour settlement); *Henry v. Little Mint, Inc.*, No. 12-cv-3966, 2014 WL 2199427, *15 (S.D.N.Y. May 23, 2014) (noting that request for fees was "in line with decisions from across the country that have awarded one-third or more in wage-and-hour settlements" and citing cases); *Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011) (noting that study of class action fee awards within the Third Circuit found that average attorney's fees percentage in such cases was 31.71% and median award was 33.3%).

lodestar of approximately $114,797.50, which corresponds to a multiplier of approximately 1.21. *See* Schalman-Bergen Decl. ¶ 36. Plaintiff's Counsel estimates that its lodestar may be approximately $125,000.00 by the time the case is resolved, which corresponds to a multiplier of approximately 1.11. *Id*. "Courts routinely award counsel two to three times lodestar in class action settlements." *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16, 2011) (collecting cases); s*ee also Beasley v. Custom Communications, Inc.*, No. 15-00583, ECF No. 116 (E.D.N.C. Oct. 24, 2017) (approving one-third contingency fee with a 1.11 lodestar multiplier); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (finding multiplier of 2.02 is "appropriate"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298-99, 303-04 (3d Cir. 2005) (finding no abuse of discretion where district court approved attorney's fees with a "fairly common" lodestar multiplier of 4.07 despite objection that lodestar multiplier could not be above 3). Furthermore, any multiplier that Plaintiff's Counsel seeks will diminish over time as Plaintiff's Counsel spends additional time on this litigation in connection with implementing and monitoring the Settlement. Among other things, Plaintiff's Counsel will work with Defendants and the Settlement Administrator to finalize Settlement Awards and distribution; answer Collective Member questions; and respond to inquiries from the Settlement Administrator.

Additionally, an evaluation of the complexity and duration also supports the requested fee. In this case, Plaintiff and Defendants agree that there are numerous disputed issues of fact and law, including whether Plaintiff and the Consultants were misclassified as independent contractors and/or exempt employees and were entitled to overtime compensation; whether Defendants' alleged violations were willful; and whether collective action treatment could be achieved and maintained. Schalman-Bergen Decl. ¶¶ 12-15. Because Defendants had potentially strong legal and factual defenses to Plaintiff's claims, an outcome of zero recovery for Plaintiff was possible. *Id*. Both trial and judicial review are unpredictable and could adversely affect the scope of an ultimate recovery, if not the recovery itself; therefore, the award is reasonable. Indeed, as the U.S. District Court for the Southern District of New York observed: "Even a victory at trial is not a guarantee of ultimate success. If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747–48 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986). Plaintiff's Counsel accepted these risks, diligently prosecuted the case, and negotiated a substantial recovery for the FLSA Collective Members that represents approximately 125% of the

unliquidated damages owed to the FLSA Collective based on Plaintiff's Counsel's calculations. Schalman-Bergen Decl. ¶ 20.

For all these reasons, the proposed fee award of one-third of the Gross Settlement Fund (*i.e.*, $138,333.33) is fair and reasonable.

## 2. Plaintiff's Counsel's Costs Should be Approved

In addition to its provision for reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b). Thus, awards of reasonable out-of-pocket costs incurred by Plaintiff's Counsel are routinely approved by courts as part of FLSA settlements. *See, e.g., Wade v. Werner Trucking Co.*, 2:10-CV-270, 2014 WL 2535226, at *2 (S.D. Ohio June 5, 2014). Moreover, "under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 (E.D. Mich. 2003).

Plaintiff's Counsel request an award not to exceed $13,000.00 for the costs they have incurred in pursuit of the claims of Plaintiff, Opt-In Plaintiffs, and FLSA Collective Members. Agreement ¶ 10(m); Schalman-Bergen Decl. ¶¶ 44-47. To date, Plaintiff's Counsel have incurred significant costs in processing client documents, processing the voluminous pay data produced by Defendants and

preparing a damages estimate, and attending mediation. *Id.* All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement, Defendants do not object to the request for costs.

## IV.   CONCLUSION

Because the Settlement reached by the parties in this case is fair and reasonable, and meets the requirements for FLSA settlement approval, this Court should enter an Order:

1.   Certifying the FLSA Collective for settlement purposes only;

2.   Approving attorneys' fees in the amount of one-third of the Gross Settlement Amount (*i.e.*, $138,333.33) and costs and expenses not to exceed $13,000.00;

3.   Approving the proposed Notice and Claim Form and authorizing distribution of the Notice and Claim Form to the FLSA Collective;

4.   Approving the use of Angeion Group, LLC as the Settlement Administrator; and

5.   Approving the Settlement Agreement and dismissing the action with prejudice pursuant to the terms of the Settlement Agreement.

Date: May 1, 2019                    Respectfully submitted,

/s *Sarah R. Schalman-Bergen*
Shanon J. Carson (*pro hac vice*)
Sarah R. Schalman-Bergen (*pro hac vice*)
Alexandra K. Piazza (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
apiazza@bm.net

Harold Lichten (*pro hac vice*)
Olena Savytska (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com

David M. Blanchard
Frances J. Hollander
BLANCHARD & WALKER, PLLC
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
Telephone: 734.929.4313
blanchard@bwlawonline.com
hollander@bwlawonline.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on May 1, 2019, a true and exact copy of the foregoing document has been filed using the Court's Electronic Filing System, which will provide notice to all attorneys of record.

/s *Sarah R. Schalman-Bergen*
Sarah R. Schalman-Bergen

27